**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | **CASE NO. 09-02048** |
| | **Chapter 7** |
| **PMC MARKETING CORP** | |
| | **Adversary No. 12-00093** |
| **Debtor(s)** | |
| **NOREEN WISCOVITCH RENTAS** | |
| **Plaintiff** | |
| **vs.** | |
| **BPP RETAIL PROPERTIES LLC** | |
| | **FILED & ENTERED ON 10/23/2013** |
| **Defendant(s)** | |

**OPINION AND ORDER**

Before this Court is Defendant, BPP Retail Properties LLC's ["BPP"] Motion for Summary Judgment [Dkt. No. 33] and Trustee/Plaintiff's Opposition to Defendant's Motion for Summary Judgment and accompanying Counterstatement of Facts [Dkt. No. 43, 44]. For the reasons set forth below, Defendant's Motion for Summary Judgment is denied in part and granted in part.

**I. Background**

Debtor, PMC Marketing Corporation, filed a voluntary chapter 11 bankruptcy petition on March 18, 2009. On February 4, 2010, Defendant filed a motion for payment of administrative expense in the amount of $74,041.40. Subsequently, on April 15, 2010 this Court entered an order

1

granting BPP's motion for payment of administrative expense in the amount of $74,041.40. On May 21, 2010, Debtor's bankruptcy case was converted to a chapter 7.  On March 2, 2012, Debtor's Chapter 7 Trustee and Plaintiff herein Noreen Wiscovitch Rentas ("Plaintiff") filed an adversary proceeding to recover funds to the estate from the Defendant in the amount of $79,777.62. Defendant's Motion for Summary Judgment and Plaintiff's Opposition followed.

## II.  Summary Judgment Motion

The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. Under Federal Rules of Civil Procedure, Rule 56(c), made applicable in bankruptcy by Federal Rules of Bankruptcy Procedure, Rule 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrates that there is no genuine issue of material fact.  In re Edgardo Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank, 263 B.R. 382, 388 (B.A.P. 1st Cir. 2001).  A fact is deemed "material" if it potentially could affect the outcome of the suit. Borges, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. at 4. The court must view the evidence in the light most favorable to the

nonmoving party.  Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004). Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." Rijos, 263 B.R. at 388.

Although this perspective is favorable to the nonmoving party, she still must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Moreover, "[o]n issues where the nonmovant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991).These showings may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). But, the evidence offered by the nonmoving party "cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." Id. See also Horta v. Sullivan, 4 F.3d 2, 7-8 (1st Cir. 1993) (the materials attached to the motion for summary judgment must be admissible and usable at trial.) "The mere existence of a scintilla of evidence" in the nonmoving party's favor is insufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); González-Pina v. Rodríguez, 407 F.3d 425, 431 (1st Cir. 2005).

In the Summary Judgment Motion presently before the court, Defendant argues that there are no genuine issues as to any material facts and that therefore the moving party is entitled to judgment as a matter of law. Defendant argues that discovery demonstrated that Defendant only received an alleged preferential transfer of $52,543.04 and not $79,777.62. The Defendant provided deposited checks in the following amount with their corresponding dates:

(1) Los Jardines Shopping Center ("Los Jardines Property") total paid $13,977.42. Check no. 092745 dated December 31, 2008 for $4,659.14, cashed on February 18, 2009. Check no. 092948 dated February 10, 2009 for $9,318.28, cashed on February 18, 2009.

(2) Dorado del Mar Shopping Center ("Dorado del Mar Property") total amount received $19,783.30. Check no. 092748 dated December 31, 2008 for $6,524.76, cashed on February 18, 2009. Check no. 092979 dated February 12, 2009 for $13,258.54, cashed on February 18, 2009.

(3) Bayamon Oeste Shopping Center ("Bayamon Oeste Property") total amount received $18,782.32. Check no. 093139 dated March 4, 2009, cashed on March 9, 2009.

Defendant further contends that for the Los Jardines Property, the amount of $13,977.42 from the payments on the executory contract lease may not be recovered by Plaintiff because Debtor assumed its lease post-petition with BPP for Store #29 on January 14, 2010, for subsequent sale to A+ HC Holding, Inc., with benefit to the estate. Thus, pre-petition payments to Defendant were necessary for the assumption and sale of the lease. Pursuant to 11 U.S.C. § 365(b)(1)(A) and (B), a trustee is entitled to "assume or reject" executory contracts with third parties. However, in order to assume a contract, the trustee must cure any default under the contract and compensate the other party for any losses resulting from the default. Further, under Section 547(b)(5) of the Bankruptcy Code, in order to make out a preference case, the trustee must establish that the alleged preferential transfer yielded the creditor a greater return on its debt than it would have received if the transfer had not taken place and it had received a distribution in a chapter 7 liquidation. Therefore, because the creditor would have been entitled to full payment even in a hypothetical chapter 7 case, the court should find that a preference claim cannot succeed. In regards to the two other properties, the Dorado del Mar Property and the Bayamon Oeste Property with executory contract payments totaling $19,783.30 and $18,782.32 respectively, these payments cannot be recovered by Plaintiff either

4

because they qualify as new value pursuant to 11 U.S.C. § 547(c)(4). Defendant further contends that it granted a total of $69,580.86 in new unsecured post-petition value for the Dorado del Mar Property, and $20,000.18 for the Bayamon Oeste Property in new unsecured post-petition value to the Debtor exceeding the executory contract payments totaling $19,783.30 and $18,782.32 respectively. Defendant argues that it has met the three requirements of Section 547(c)(4): (1) the creditor must have extended new value after receiving the preference; (2) the new value must have been unsecured; and, (3) the new value must remain unpaid.

In its Opposition, Plaintiff argues that (1) Debtor made payments to the Defendant during the preference period and (2) Defendant failed to meet its burden for the new value exception because the new value was paid for with unavoidable transfers. Even if the new value exception is applicable, the new value does not set off the full amount of the payments made to Defendant. Plaintiff specifies that in order for the new value defense to apply, Defendant must have supplied new value after the preferential payments to which Defendant cannot have been compensated for the new value by an otherwise unavoidable transfer. Plaintiff points out that for Debtor's two properties in question, the Dorado del Mar Property and the Bayamon Property, the following facts apply:

(1) Dorado del Mar Property: The preferential transfer made during the 90 days prior to the filing of Debtor's petition was made on February 18, 2009 in the amount of $19,783.30. Therefore, Defendant's possible new value provided through the February 18, 2009 payment in the amount of $10,843.89 cannot cover the preferential payment in full. Therefore, even if new value defense applies, Plaintiff is still entitled to the difference of $8,939.41.

(2) Bayamon Oeste Property: The preferential transfer made during the 90 days prior to the filing of Debtor's petition was made on February 18, 2009 in the amount of $18,782.32. Therefore, Defendant's possible new value provided through the March 9, 2009 payment in the amount of $5,276.94 cannot cover the preferential payment in full. Therefore, even if the new value defense applies, Plaintiff is still entitled to the difference of $13,505.38.

5

Summarily, Plaintiff requests this Court to find that the new value defense does not apply. Alternatively, if the new value defense does apply, Plaintiff requests this Court to find that only the new value provided prior to the filing of the petition can be used to offset preferential payments and that Plaintiff is still entitled to the above difference of $8,939.41 for the Dorado del Mar Property and $13,505.38 for the Bayamon Oeste Property.

**A. Summary Judgment**

After reviewing the Plaintiff's arguments, and the relevant law, this Court concludes that there are genuine issues as to material facts and that the moving party is not entitled to judgment as a matter of law.  In a motion for summary judgment, in order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense, *or* demonstrate that the nonmoving party does not have sufficient evidence of an essential element to carry its ultimate burden of persuasion at trial. Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1516-17 (1st Cir. 1991); High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir.1990). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. Id.

Therefore, if a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce any evidence, even to the extent that the nonmoving party would have the ultimate burden of persuasion at trial. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); High Tech Gays, 895 F.2d at 574. With such scenario above, the nonmoving party can then defeat a summary judgment motion without producing any evidence.

6

See High Tech Gays, 895 F.2d at 574; Clark v. Coats & Clark, Inc., 929 F.2d 604, 607 (11th Cir.1991). On the contrary, if a moving party carries out its burden of production, the nonmoving party must produce evidence to support its claim or defense. See High Tech Gays, 895 F.2d at 574; Cline v. Industrial Maintenance Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir.2000). Therefore, if the nonmoving party fails to produce sufficient evidence to create a genuine issue of material fact, the moving party prevails in the motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") Alternatively, if the nonmoving party produces sufficient evidence to establish a genuine issue of material fact, the nonmoving party defeats the motion. See id.

Therefore, the primary inquiry this Court must decide first is whether the Defendant, as the moving party, carried its initial burden of production and accordingly whether the Plaintiff, as the nonmoving party, had an obligation to produce evidence in response. The Supreme Court provided for such analytical framework in Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court, under Adickes and Celotex, offered guidance that a moving party without the ultimate burden of persuasion at trial may regardless carry its initial burden of production by either of two methods: the moving party may produce evidence

negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. In practice, the first method mentioned above or the Adickes method, may be more commonly employed because the moving party may find it easier to produce affirmative evidence negating an essential element of the nonmoving party's claim or defense than it is to show that the nonmoving party has insufficient evidence to carry its ultimate burden of persuasion at trial. Regardless the second or the Celotex method, is equally favored legally, where in appropriate cases, a moving party can carry its initial burden of production by demonstrating that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial.

### B. Preferential Transfers

In this instant case, this Court takes judicial notice that the Debtor's bankruptcy filing date is March 18, 2009, per the date stated on the Case Docket. The question this Court must then answer is whether Debtor's two payments in the amount of $18,782.32, in relation to the Bayamon Oeste Property, and $19,783.30 in relation to the Dorado del Mar Property made on February 18, 2009, constitute avoidable transfers.

In order for payments to be recoverable as preferential transfers, payments must satisfy all of the requirements of 11 U.S.C. § 547(b). The trustee bears the burden of proving the transfers were: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfers were made; (3) made while the debtor was insolvent; (4) made on or within ninety (90) days before the date of filing of the petition; and, (5) that enabled the benefited creditor to

8

receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor not received the transfer. 11 U.S.C. § 547(b). This Court is satisfied per the evidence provided by the Plaintiff that Debtor's payments to Defendant meet the criteria of § 547(b), and therefore are preferences as defined by the Code.

      **i.      New Value Exception**

Although Section 547(b) of the Bankruptcy Code authorizes a trustee to avoid preferences, Section 547(c) equips the transferee with certain defenses. These defenses "are designed to rescue from attack in bankruptcy those kinds of transactions, otherwise fitting the definition of a preference, that are essential to commercial reality and do not offend the purposes of preference law, or that benefit the ongoing business by helping to keep the potential bankrupt afloat." Epstein, Nickles & White, Bankruptcy, Practitioner Treatise Series, Vol. 1, § 6–3, at 587 (1992). Pursuant to Section 547(c), the trustee may not avoid a transfer under Section 547(b) that (1) was "intended by the debtor and the creditor ... to be a contemporaneous exchange for new value given to the debtor" and "in fact" was a "substantially contemporaneous exchange" ("contemporaneous exchange defense"), 11 U.S.C. § 547(c)(1); (2) was "in payment of a debt incurred by the debtor in the ordinary course of business" ("ordinary course of business defense"), 11 U.S.C. § 547(c)(2); or (3) was followed in time by "new value" given by the creditor "to or for the value of the debtor" ("subsequent new value defense"), 11 U.S.C. § 547(c)(4).

Section 547(c)(4), or the subsequent new value defense, takes a creditor off the hook for preference liability when it provides new value after the debtor made a preference transfer to the creditor. In re JKJ Chevrolet, Inc., 412 F.3d 545, 552 (4th Cir.2005). The reason for this provision is

9

because "the creditor's provision of the subsequent goods or services has replenished the estate." In re Bridge Info. Sys., Inc., 287 B.R. 258, 266 (E.D.Mo.2002). In other words, because the new value effectively repays the earlier preference, such new value offsets the harm to the debtor's other creditors. See Kroh Bros. Dev. Co. v. Cont'l Constr. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.), 930 F.2d 648, 652 (8th Cir.1991); Laker v. Vallette (In re Toyota of Jefferson, Inc.), 14 F.3d 1088, 1091 (5th Cir.1994). Further, the philosophy for this provision is translucent, as the "new value" exception encourages creditors to deal with troubled businesses to enhance the probability of avoiding bankruptcy on both ends, In re IRFM, Inc., 52 F.3d 228, 232 (9th Cir.1995); Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines), 130 F.3d 323, 326 (8th Cir.1997); Southern Technical Coll., Inc. v. Hood, 89 F.3d 1381, 1384 (8th Cir.1996) (quoting Kroh Bros., 930 F.2d at 651); Charisma Inv. Co., N.V. v. Airport Sys., Inc. (In re Jet Florida Sys., Inc.), 841 F.2d 1082, 1083 (11th Cir.1988); see Toyota of Jefferson, Inc., 14 F.3d at 1091; see generally 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 547.04[4][b], at 547–65 (16th ed. 2011), "promotes the continuation of revolving credit relationships, whereby new value is continually being advanced to the debtor after payment of old debt." Bogdanov v. Avnet, Inc., 10-CV-543-SM, 2011 WL 4625698 (D.N.H. Sept. 30, 2011) (quoting In re Pillowtex Corp., 416 B.R. 123, 131 (D.Del.2009)), and fulfills the promotion of equal creditor treatments. Jet Florida Sys., Inc., 841 F.2d at 1083–84. Accordingly, the central question this Court must decide is whether "the new value replenishes the estate." Kroh Bros., 930 F.2d at 652; Savage & Assocs., P.S. v. Level(3) Commc'ns (In re Teligent, Inc.), 315 B.R. 308, 315 (Bankr.S.D.N.Y.2004).  The party relying on the new value defense has the burden to demonstrate

10

that it gave unsecured new value after the preferential transfer. Mosier v. Ever–Fresh Food Co. (In re IRFM, Inc.), 52 F.3d 228, 231 (9th Cir.1995). In other words, the subsequent new value defense cannot apply if a creditor, who has the burden of proof, cannot establish that "the debtor did not make an otherwise unavoidable transfer" "on account of" the new value. 11 U.S.C. § 547(c)(4)(B). Accordingly, the "majority rule" states that a creditor must establish that the debtor did not later pay for the new value with an "otherwise unavoidable transfer." Id; E.g., Mosier v. Ever–Fresh Food Co., 52 F.3d at 231 (discussing the majority emerging trend). "That is, the creditor cannot both shield a prior preference payment by offsetting it with subsequent new value, and also keep a subsequent preferential payment for the new value under some other defense (e.g., contemporaneous exchange)." Bogdanov v. Avnet, Inc., 10-CV-543-SM, 2011 WL 4625698 (D.N.H. Sept. 30, 2011). This majority approach reasons that if the debtor pays for the new value, the estate has not been replenished and the creditor receives the dual benefit of a new value defense and the payment for the new value. Kroh Bros., 930 F.2d at 652 ("If the new value advanced has been paid for by the debtor, the estate is not replenished and the preference unfairly benefits a creditor.")

While the majority rule focuses on whether the new value remains unpaid, the minority rule focuses on the avoidability of the debtor's subsequent payments. Either rule however, may be followed by a bankruptcy or district court in this Circuit, absent First Circuit Court of Appeals guidance. Bogdanov v. Avnet, Inc., 10-CV-543-SM, 2011 WL 4625698 (D.N.H. Sept. 30, 2011); see also Newspapers v. Travelers Indemnity Co., (In re Maxwell Newspapers), 192 B.R. 633 (Bankr.S.D.N.Y.1996). The District Court in Bogdanov, explains that:

> On its face, Section 547(c)(4) clearly, though conditionally, allows new value to be paid: the statute anticipates transfers made "on account of ... new value," and requires that any such

11

payment be "not ... otherwise unavoidable." 11 U.S.C. § 547(c)(4). As the bankruptcy court noted, "not ... otherwise unavoidable" generally means "otherwise avoidable." Doc. No. 5–1 at 18 (quotation omitted). Given the words used in the statute, offsetting new value may be paid so long as the payment is "otherwise avoidable" by the trustee. The double-negative adds frustrating complexity to the condition's description, but the statute is unambiguous in allowing new value to be paid so long as the "otherwise avoidable" condition is met. See Matter of Toyota of Jefferson, Inc., 14 F.3d 1088, 1092 (5th Cir.1994) ("plain language" of the statute allows new value to be "paid" under prescribed circumstances); In re IRFM, Inc., 52 F.3d 228, 231 (9th Cir.1995) (same); see also 4 Norton Bankr.L. & Prac.3d § 66:36 & n. 25 (same, collecting cases) ("The focus of the inquiry is on the avoidability of the debtor's subsequent payments, and not on whether the new value remains unpaid.")

A bankruptcy in our sister circuit further explains that "[a] creditor should not be able to assert a new value transfer as a defense to a preference if the transfer was paid for by the debtor because the estate was not made whole by the new value transfer. But, ... by the same token, the trustee should not be able to assert the new value was paid if the trustee is asserting that the paying transaction was in fact a preference which the trustee can avoid." In re Check Reporting Svcs., 140 B.R. 425, 434 (Bkrtcy.W.D.Mich.1992). In other words, "[t]here is no logical reason to distinguish between a creditor that was paid by an avoidable transfer and one that was never paid at all. At the end of the day, in both cases, the creditor has been wholly uncompensated for his new value." In re Maxwell Newspapers, 192 B.R. 633, 639 (S.D.N.Y.1996). Similarly, the court, in Travelers, points out several flaws to the majority approach and rules in favor of the minority approach. Newspapers v. Travelers Indemnity Co., 192 B.R. at 639. The Travelers Court identified that (1) most of these courts that followed the majority rule ruled did so in dicta. (2) The majority rule ignores Section 547(c)(4)(B) which states that the defense is available if the debtor "did not make an otherwise unavoidable transfer to or for the benefit of such creditor" because this phrase implies some payments will not deprive the transferee of the new value defense. Despite the double negative language found in the

12

statute, "the statute means that the new value defense is available, despite payment, if the payment was an avoidable transfer, i.e., a preference or fraudulent transfer. Under those circumstances, the creditor must return the second payment, and there is no logical reason to distinguish between a creditor that was paid by an avoidable transfer and one that was never paid at all." In re Musicland Holding Corp., 462 B.R. 66, 70-71 (Bankr.S.D.N.Y. 2011) (internal quotations and citations omitted). This minority interpretation is consistent with the policy reasoning of the subsequent new value exception as to facilitate creditors to continue dealing with a financially shaky debtor and to replenish an estate diminished by a preference. Accordingly, a creditor is entitled to only a one-time credit benefit for goods and services it later supplied. Summarily, unlike the majority rule, the minority yet emerging reading does not require that the subsequent new value remain unpaid, but does require that the preference payment be avoidable (*i.e.*, statutory language "not otherwise unavoidable").

In this instant case, Plaintiff admits that it claimed the incorrect amount in its initial complaint. The alleged preferential transfer value is $52,543.04 and not $79,777.62 as demonstrated by Defendant's Motion for Summary Judgment. Cf., [Dkt. No.'s 1 and 43]. This Court adopts the minority approach of Section 547(c)(4). As guided by the Supreme Court, "[w]here a statute is clear on its face the plain meaning of its language should be applied." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989). "While '[i]t is emphatically the province and duty of the judicial department to say what the law is[,]' the court must interpret this statutory provision in accordance with legislative intent upon the passage of [Section 547(c)(4)]. In re Lee Min Ho Chen, 482 B.R. 473, 481 (Bankr. D.P.R. 2012) (quoting Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed.

13

60 (1803)). On its face, the statute does not permit an ambiguous reading as the majority approach has taken on incorporating the requirement of mandating that the new value remains unpaid in order for a creditor to prevail in a subsequent new value defense. Although this Court takes the minority approach, the Defendant fails to adequately demonstrate to this Court how it met the burden of the subsequent new value defense and whether it met the subsequent new value defense in whole or in part regarding the Dorado del Mar and the Bayamon Oeste Properties. Merely pointing to the Code and citing some facts with no connecting analysis are insufficient to meet the burden of prevailing in a motion for summary judgment. These questions will need to be addressed at a trial.

Summarily, Defendant failed to carry out the burden as mandated by either Adickes or Celotex. Defendant not only failed to produce evidence negating an essential element of the nonmoving party's case, but it also failed to show that the Plaintiff does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. Summarily, Plaintiff presented sufficient evidence to demonstrate that there is genuine issue of fact in dispute for a trial.

However, in regards to the Los Jardines Property controversy, this Court will grant the summary judgment in part to the Defendant because the Plaintiff did not address the arguments posed by the Defendant in regards to the Los Jardines Property payments.

WHEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment shall be, and it hereby is, DENIED IN PART as to the Dorado del Mar Property for payment in the amount of $19,783.30 and the Bayamon Oeste Property for payment in the amount of $18,782.32, and GRANTED IN PART as to the Los Jardines Property in the amount of $13,977.42. Clerk to enter

14

judgment and schedule a final pre-trial hearing.

SO ORDERED

San Juan, Puerto Rico, this 23rd day of October, 2013.

Brian K. Tester
U.S. Bankruptcy Judge

15